**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TMW ENTERPRISES, INC., et al.,

      Plaintiffs,

v.                                                              Case No. 07-CV-12230

FEDERAL INSURANCE COMPANY,

      Defendant.
                                                    /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Pending before the court are a number of summary judgment motions. First, Plaintiffs TMW Enterprises, Inc. and Shain Park Associates, LLC, filed a motion for partial summary judgment which was soon thereafter followed by another partial summary judgment motion. Defendant then filed a motion for complete summary judgment. As will be discussed more thoroughly below, Plaintiffs' combined motions function as a cross-motion for summary judgment. All motions have been fully briefed, and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion for summary judgment and deny Plaintiffs' motions for partial summary judgment.

**I. BACKGROUND**

The facts are largely undisputed, and the material facts are not disputed at all. Plaintiffs bought a new condominium housing and commercial retail project, located in Birmingham, Michigan, on December 29, 2004. (Pls.'s 1/14/09 Mot. at 2.) Around the

same time, Plaintiffs added coverage for the property under an insurance policy already maintained with Defendant. (*Id.*) Some time later, Plaintiffs hired an architecture firm to make upgrades and modifications to the property. (*Id.* at 3.) As part of this upgrade process, Plaintiffs undertook certain structural changes to the property. (*Id.* at 4; Def.'s Mot. at 6.) These structural changes, which necessitated the demolition of some walls (Pls.'s 1/14/09 Mot. at 4), revealed significant and widespread damage to, at the minimum, internal fireproofing, structural steel, and masonry fasteners. (*Id.*; Def.'s Mot. at 6.) Plaintiffs, believing that the damage to the property was caused by water infiltration, made a claim under its insurance policy with Defendant on June 26, 2006. (Pls.'s 1/14/09 Mot. at 4.) Defendant then hired an engineering company to inspect the property and determine the cause of the damage. (*Id.*; Def.'s Mot. at 6.) This engineering company agreed with Plaintiffs that significant water damage was present (Def.'s Mot., Ex. 13 at 1), but stated that the water damage was the result of "numerous construction defects . . . [which] involve moisture penetration issues." (*Id.*) Based on the report, Defendant denied coverage for Plaintiffs' loss. (Def.'s Mot. at 6-7.) Specifically, Defendant relied upon two policy exclusions to preclude coverage, the "Planning, Design, Materials or Maintenance Exclusion" and the "Wear and Tear Exclusion." (*Id.* at 7; Pls.'s 1/14/09 Mot. at 5.) Plaintiffs requested reconsideration of Defendant's decision and, while that reconsideration was on-going, Plaintiffs brought their complaint for declaratory judgment. (Def.'s Mot. at 8; Pls.'s 1/14/09 Mot. at 5.)

Plaintiffs present two partial summary judgment motions. In the first, Plaintiffs argue that the clear language of the exclusions Defendant cited to deny coverage include "ensuing loss" clauses which function to "give back" coverage for the water

2

damage to the property. (Pls.'s 1/14/09 Mot. at 9-18.) Plaintiffs also argue that only "the most direct cause of loss" is relevant to the court's interpretation of the insurance policy (*id.* at 18-20), which, they assert, is water. Defendant responds that Plaintiffs' interpretation of any "ensuing loss" clause is contrary to Michigan law. (Def.'s 3/10/09 Resp. at 3-4.) In addition, Defendant argues that Michigan courts have expressly rejected a "concurrent cause of loss doctrine," and thus Plaintiffs' claims are barred if any policy exclusion applies, even if it only caused a portion of the loss. (*Id.* at 5.) Plaintiffs' second partial summary judgment motion attacks three of Defendant's affirmative defenses, which Defendant contests.

Finally, Defendant's motion for summary judgment argues that the policy's exclusions are clear and do not work to add back any coverage. (Def.'s Mot. at 13-20.) Defendant also addresses the timing of Plaintiffs' claim for coverage and Defendant's alleged violation of a federal statute. (*Id.* at 20-23.) Taken as a whole, Plaintiffs' two motions for partial summary judgment, Defendant's motion for summary judgment, and the accompanying responses and replies are properly construed as cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 and have the potential to fully resolve the issues pending between these parties.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United*

3

*States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a

verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

Finally, under the long-standing *Erie* doctrine, if an action is brought in federal court and invokes diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007) (citing *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998)). In this diversity action, the court applies Michigan law.

### III. DISCUSSION

Where the dispute between the parties concerns the extent of insurance coverage, the court must determine that to which the parties agreed in the applicable policy. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433-34 (Mich. 1992). Such a determination requires the court to apply a two-part analysis. *Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 510 (Mich. 1995). First, the court determines if the policy provides coverage to Plaintiffs. In this case, that involves both looking to the kind of property that is covered (the "interest" clause) and examining the type of events causing loss that are covered (the "insuring" clause). *Vons Cos., Inc. v. Federal Ins. Co.*, 212 F.3d 489, 491 (9th Cir. 2000). If the policy covers both the kind of

property[1] and the type of event causing the loss, then the court applies the second part of the analysis and determines if the coverage is negated by an exclusion. *Buczkowski v. Allstate Ins. Co.*, 526 N.W.2d 589, 594 (Mich. 1994).

A special case exists, though, where there are "two or more identifiable causes, at least one of which is covered under the policy and at least one of which is excluded thereunder, [which] contribute to a single loss." *Iroquois on the Beach, Inc. v. Gen. Star Indem. Co.*, 550 F.3d 585, 588 (6th Cir. 2008) (quoting 7 Steven Plitt, et al., *Couch on Insurance* § 101:45 (3d ed. 2008)). This special case is known to Michigan courts as the theory of "dual or concurrent causation." *Iroquois*, 550 F.3d at 588. The Michigan Supreme Court has "expressly declined to adopt [concurrent causation.]" *Id.* (citing *Vanguard Ins. Co. v. Clarke*, 475 N.W.2d 48, 53 (Mich. 1991) (*overruled on other grounds by Wilkie v. Auto-Owners Ins., Co.*, 664 N.W.2d 776 (Mich. 2003)). Indeed, "the default rule under Michigan law is that a loss is *not* covered when it is concurrently caused by the combination of a covered cause and an excluded cause." *Iroquois*, 550 F.3d at 588 (emphasis in original); *see also United States Fid. & Guar. Co. v. Citizens Ins. Co. of Am.*, 506 N.W.2d 527, 529 (Mich. Ct. App. 1993); *Commerce Ctr. P'ship v. Cincinnati Ins. Co.*, No. 265147, 2006 WL 1236745, *1 (Mich. Ct. App. May 9, 2006); *Auto Club Ins. Co. v. Petz*, No. 242933, 2003 WL 22975501, *1 (Mich. Ct. App. Dec. 18, 2003) ("[T]he Supreme Court declined to accept the theory of dual or concurrent causation in determining insurance issues where the exclusion . . . was unambiguous.");

---

[1] The parties do not dispute that the insurance policy at issue covers "direct physical loss or damage to [a] building; or personal property caused by or resulting from a peril not otherwise excluded." (Pls.'s 1/14/09 Mot., Ex. B at 20.)

6

*Pioneer State Mut. Ins. Co. v. Splan*, No. 220477, 2003 WL 1361552, *4 (Mich. Ct. App. Mar. 18, 2003) ("[T]he courts of this state have rejected the concurrent causation theory in the context of insurance liability.") (quotation omitted).

Despite the extensive briefing on a variety of legal issues in the three motions before the court, there is but a single issue that merits the court's attention, as it is dispositive. Under Michigan's "default rule," if there were two concurrent causes that resulted in the property damage here, and one of the causes is unambiguously excluded under the policy, Plaintiffs cannot recover. *Iroquois*, 550 F.3d at 588. Such a situation exists under the undisputed facts.

The exact sequence of causation is in dispute – Plaintiffs argue that water was the most recent and therefore more direct cause of damage to the property (Pls.'s 3/12/09 Resp. at 16), while Defendant argues that there can be no dispute that water damage occurred only as a result of construction defects (Def.'s Mot. at 7). While the parties dispute to some extent the order of the events that caused the eventual damage to the property, it is undisputed that the damage was caused, at least in substantial part, by two concurrent causes: construction defects and water. (Pls.'s Resp. at 9, "[Plaintiffs do] not dispute that the latent construction defects permitted water to infiltrate the Building, which resulted in ensuing water damage.") In some states, whether coverage exists for certain events is determined through sequencing and proximate cause analysis. *See, e.g.*, *Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 136 F. Supp. 2d 901, 905-906 (W.D. Tenn. 2001). In Michigan, however, sequencing is irrelevant – it is the *existence* of two or more concurrent causes that controls, not the order or magnitude of their effect. *Iroquois*, 550 F.3d at 588. Thus, in this case, there is no

genuine issue of material fact that latent construction defects and water incursion were concurrent causes of Plaintiffs' property damage.

In concluding there were two concurrent causes of Plaintiffs' property damage, the court must determine whether one of the causes was unambiguously excluded under the contested insurance policy. *Auto Club Ins. Co.*, 2003 WL 22975501 at *1. Plaintiffs' policy includes coverage for "direct physical loss or damage to: building; or personal property, caused by or resulting from a peril not otherwise excluded." (Pls.'s 1/14/09 Mot., Ex. B at 20.) Among the policy's excluded perils is a section entitled "Planning, Design, Materials Or Maintenance," which states:

> This insurance does not apply to loss or damage (including the costs of correcting or making good) caused by or resulting from any faulty, inadequate or defective:
>
> • planning, zoning, development, surveying, siting;
> • design, specifications, plans, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> • material used in repair, constructions, renovation or remodeling; or
> • maintenance,
>
> of part or all of any property on or off the premises shown in the Declarations. This Planning, Design, Materials Or Maintenance exclusion does not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded.

(*Id.*, Ex. B at 34.)

Plaintiffs and Defendant argue extensively for different interpretations of the "ensuing loss" language and whether that language includes water damage, but in light of Michigan's "default" rule for concurrent causes, the important initial question is whether the unambiguous language of the above clause excludes one of the two causes present in this case.

8

In examining the language of an insurance policy, the court must give words their plain and ordinary meaning and cannot create ambiguity where none exists. *Heniser v. Frankenmuth Mutual Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995). If a term is ambiguous, however, the ambiguity is to be construed against the insurer and in favor of coverage. *Id.* at 504. Here, the plain language of the exclusion states that coverage is excluded for damage that resulted from "faulty, inadequate or defective . . . design . . ., workmanship, repair, [or] construction," among other reasons. (Pls.'s 1/14/09 Mot., Ex. B at 34.) The court finds no ambiguity in a clause excluding coverage for the results of "inadequate or defective . . . construction." Nor do the parties contest that the words exclude coverage for construction defects. Further, Plaintiffs admits that there is no "dispute that the latent construction defects permitted water to infiltrate the Building, which resulted in ensuing water damage." (Pls.'s Resp. at 9.) In light of the two concurrent causes of damage present here – defective construction and water infiltration– together with the unambiguous exclusion for one of the causes – defective construction – Plaintiffs cannot recover under the policy as a matter of law. *Iroquois*, 550 F.3d at 588.

In parrying the Michigan default rule, Plaintiffs propose two arguments. First, Plaintiffs urge that applying the default rule would in this case "render the [ensuing loss] Clauses a nullity because an 'ensuing' loss will always be casually [sic] related to a concurrent cause." (Pl.'s 3/12/09 Resp. at 18.) Thus, Plaintiffs argue, applying the default rule would not give effect "'to every word[,] phrase, and clause in the [Policy] and [would not] avoid an interpretation that would render any part of the [Policy] surplusage or nugatory," (*id.*, quoting *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 468

9

(Mich. 2003)), in violation of Michigan insurance contract rules of construction. For two reasons the court does not agree. First, rules of policy construction, such as that outlined in *Klapp* and proffered by Plaintiffs, function to interpret the words of an insurance policy. *Klapp*, 663 N.W.2d at 469. Because of the clear default rule governing concurrent causes under Michigan law, the court need not interpret the ensuing loss clause. Had the court sought to analyze the interaction between the ensuing loss clause and the exclusion as a whole, Plaintiffs' proposed rule of construction could be important. Michigan's default rule operates, in a sense, outside of the four corners of the insurance policy and dictates the practical consequences that result from concurrent causes in insurance claims. It does not define the meaning of the policy's words, but it does, in situations such as this, dictate their effect. Second, the court cannot agree that every "'ensuing' loss must be causally related to a concurrent cause." (Pl.'s 3/12/09 Resp. at 18.) To ensue is "to follow . . . to take place afterward *or* as a result."[2] Because the meaning of "ensuing" need not – but may – imply a causal component, an "ensuing loss" need not – but only may – be a loss causally related to an earlier cause, excluded or otherwise. All that may be required for an ensuing loss is that it occurred later in time. Plaintiffs' concern that the ensuing loss Clauses are rendered "a nullity" is unconvincing.

Plaintiffs argue secondly that Defendant intended to contract around the Michigan default rule. (Pls.'s 3/12/09 Resp. at 19.) The "default rule could presumably be altered by the inclusion of an express concurrent-causation provision." *Iroquois*, 550

---

[2] Merriam-Webster, *available at* http://www.merriam-webster.com/dictionary/ensue (last visited Mar. 31, 2009) (emphasis added).

F.3d at 588 n.4 (citing *Hayley v. Allstate Ins. Co.*, 686 N.W.2d 273, 277-78 (Mich. Ct. App. 2004) (Cooper, J., dissenting)). Plaintiffs assert that because Defendant did not include "anti-concurrent causation language," it cannot now rely on the Michigan default rule to defeat coverage. (Pls.'s 3/12/09 Resp. at 19.) As opposed to the *Iroquois* court's observation that parties might "opt-out" of state default rules, Plaintiffs essentially propose that an insurer must "opt-in" to activate the law governing the policy's interpretation. The practical effect of accepting this argument would be absurd, as it would turn the meaning of a "default" rule of interpretation on its head. The very nature of a default rule is that nothing more is required for it to be given effect. If the facts fit, and nothing more is added to the equation (such as, for example, the parties opting out) the default result is reached merely from the application of the rule. Under Plaintiffs' view (moderately, but logically, extended), an insurer would be required to make explicit in its contracts of coverage all law, statutory and common, governing the insurance relationship. The theoretical ability to contract around Michigan's default rule cannot be made to support such an idea. In fact, in another portion of Plaintiffs' argument support is found for the "opt-out" nature of a default rule. Plaintiffs point out that Defendant's policy includes, under the "Ordinance or Law" exclusion section, language stating:

> When direct physical loss or damage is caused by or results from both:
>
> • a peril not otherwise excluded; and
> • an excluded peril,
>
> . . . the valuation will be based on that portion of such costs equal to the proportion that the covered direct physical loss or damage bear to the total direct physical loss or damage.

(*Id.*) This is language evincing an intent to contract around Michigan's default rule. It

allows some recovery where an excluded peril caused some portion of loss.  But that is exactly the point: this language, confined to one specific section of the policy, opts out of the Michigan default rule against concurrent causation.  If the parties had intended this highly specific language to apply generally to the entire policy, it would not have been confined to a single, slightly obscure, policy exclusion.  The fact that the language does not appear elsewhere in the policy further supports the court's finding that the parties intended legal default rules to apply.

## IV.  CONCLUSION

Because it is undisputed that there were two concurrent causes which resulted in damage to Plaintiffs' insured property, one of which is unambiguously excluded from coverage, the application of Michigan's default rule against concurrent causation in insurance policies impels the court to find there is no dispute of material fact that Plaintiffs are not entitled to coverage for their loss.

Accordingly, IT IS ORDERED that Defendant's "Motion for Summary Judgment" [Dkt. # 69] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' motions for partial summary judgment [Dkt. ## 65, 68] are DENIED.

   S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2009
I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 31, 2009, by electronic and/or ordinary mail.

   S/Lisa Wagner
Case Manager and Deputy Clerk

(313) 234-5522